UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN HENNING-URBANEK,

     Plaintiff,

v.                                                     Case No. 24-cv-11036
                                                       Honorable Linda V. Parker

SPEEDWAY LLC,

     Defendant.

_____/

## <u>OPINION AND ORDER DENYING DEFENDANT'S</u><br><u>MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)</u>

This is a diversity action involving a premises liability claim.  Plaintiff Robin Henning-Urbanek seeks damages for injuries she allegedly incurred when she slipped and fell on ice outside Defendant Speedway LLC's gas station in Chesterfield, Michigan.  On April 18, 2024, Defendant removed the case pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).  (ECF No. 1.)  Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 17.)  The matter has been fully briefed.  (ECF Nos. 18 and 19.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to Defendant's motion pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court denies Defendant's motion.

## STATEMENT OF FACTS

On February 26, 2021, at approximately 6:00 a.m., Plaintiff stopped at Defendant's gas station and convenience store located at 29329 23 Mile Road in Chesterfield, Michigan ("the gas station").  Plaintiff regularly stops at the gas station to get coffee or to use the bathroom on her commute to work.  (ECF No. 18-4, PageID.254, 262.) It was dark outside when Plaintiff pulled into the parking lot, so she parked in the handicapped spot next to the sidewalk on the side of the store, because the exterior of the building was lit.  (ECF No. 18-4, PageID.255.) Upon exiting her car, Plaintiff stepped up onto the curb, walked on the walkway running along the perimeter of the store and entered the store for the purpose of using the bathroom.  (*Id*. PageID.254, 256.)  She took her purse with her and surveillance images show her glancing at items in the aisle on her way to the bathroom. (ECF No. 18-10, PageID.292-93.). However, Plaintiff did not make any purchases.  (ECF No. 18-4, PageID.257.) Upon leaving the store, Plaintiff took a slightly different route to her vehicle, walking down the handicap ramp to get to the parking lot.  Plaintiff alleges she slipped and fell on black ice in the area where the ramp became level with the parking lot.  (*Id*. PageID.258.)

It was below freezing when store manager Amanda Harrod arrived for work on the day of the incident at around 4:30 or 4:45 a.m.  (ECF No. 17-2, PageID.151.)  She parked on the side of the store next to the handicapped parking

spot where Plaintiff later parked her car.  (*Id*. PageID.150.)  Harrod did not recall the specific date in question, but testified it was her practice to "physically inspect the areas around the store" upon arrival to make sure that the sidewalks were "cleared and salted" to the extent necessary.  (*Id*. PageID.146-148.)  If she "noticed that [the walkway] needed to be salted," she would "clock in and . . . get outside and salt."  (*Id*. PageID.154.)  Ms. Harrod could not recall any incidents of black ice at that location.  (*Id*. PageID.154-155.)  She believes she must have missed the patch of ice that Plaintiff slipped on when she arrived at work that morning.  (ECF No. 18-2, PageID.245.)

Speedway's operations manual provides that employees are to inspect the driveway and sidewalks when temperatures fall below freezing at night.  They are to "pay particular attention to canopy edges, drains, leaking canopies, light fixtures, low spots that collect water[,] and[] traffic lanes."  (ECF No. 18-5, PageID.271.)  Ms. Harrod testified she was not aware of any leaking canopies during the 3 or 4 years she worked at the store.  (ECF No. 17-2, PageID.152.)

However, Crystal Bigelow, who was an employee at the gas station at the time of the incident, testified that the roof near where Plaintiff fell "leaked regularly every time it rained, anytime it snowed and the snow melted.  Any time we had a heavy rain, it leaked."  (ECF No. 18-3, PageID.250.)  Bigelow no longer works at the gas station, but she continues to be a patron of the station.  She

explained that the canopy "leaked then and it leaked now – and it still leaks now."
*Id*.  Bigelow did not tell anyone in management about the canopy leak because the
leak is "not hard to miss."  (*Id*. at PageID.251.)  On the day of the incident,
Bigelow parked behind the building, so she did not know whether the roof was
leaking on that particular day.  (ECF No. 17-8, PageID.192.)  Bigelow testified that
there was not a set schedule for inspecting the property, but if someone raised an
issue then an employee would do something about it.  (ECF No. 18-3,
PageID.252.)

Plaintiff has lived in Michigan for over sixty years and is familiar with the
concept of black ice and the fact that it is common for ice to thaw and refreeze
during Michigan winters.  (ECF No. 17-6, PageID.184-185.)  She did not see the
ice she slipped on before she fell.  (ECF No. 17-6, PageID.178.)  She only knew it
was ice because her feet went out in front of her.  (*Id*.)  A photograph of the area
where Plaintiff fell, which was taken after the incident, shows that portions of the
concrete were darker than the rest of the parking lot.  (ECF No. 17-7, PageID.187.)
Once the incident was reported to store employees, they quickly salted the area
where Plaintiff fell.  (ECF No. 17-6, PageID.177-78.)  Plaintiff acknowledged that
she did not see the ice before she fell and because it was black ice nobody would
have been able to see it. (*Id*. at PageID.179-80.)

Weather records show that the last snowfall occurred four days before Plaintiff's accident. On the subsequent days, the temperature was in the 40s and 50s during the day and was below freezing overnight. (ECF No. 18-14, PageID.304.)

## LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry when evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To

5

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

## ANALYSIS

To succeed in a premises liability action, the plaintiff must prove four elements. First, the defendant owed the plaintiff a duty of care. Second, the defendant breached that duty. Third, the defendant's breach was the actual and proximate cause of the plaintiff's injury. And fourth, the plaintiff suffered damages. *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 51 (Mich. 2023). Defendant argues it is entitled to summary judgment because there are no genuine disputes of material fact as to whether it breached the duty of care it owed to Plaintiff.

### Plaintiff's Status

A landowner's duty to an individual who enters the land depends on whether the individual is a trespasser, licensee, or invitee. *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). Here, the parties dispute whether Plaintiff was a licensee or an invitee on Defendant's premises at the time she was injured.

6

To determine whether a visitor is a licensee or an invitee, courts look to whether the visitor's presence is related to the pecuniary interests of the possessor of land. *Stanley v. Town Square Co-op*, 512 N.W.2d 51, 54 (Mich. Ct. App. 1993). The Michigan Supreme Court has adopted the definition of "invitee" contained in the Restatement (Second) of Torts, which states: An invitee is either a public invitee or a business visitor.

> (1) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

> (2) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

*Preston v. Sleziak*, 175 N.W.2d 759, 763 (Mich. 1970) (quoting Restatement (Second) Torts § 332 (1965)).[1] Where the premises owner operates a business on the land, an individual is considered an invitee "if the visit may reasonably be said to confer or anticipate a business, commercial, monetary, or other tangible benefit" to the owner. *Socha v. Passino*, 306 N.W.2d 316, 318 (Mich. Ct. App. 1981). By contrast, a licensee is defined as one who is on the premises of another because of some personal, unshared benefit and is merely tolerated by the owner. *Id.*

Defendant argues Plaintiff was a licensee because she entered the gas station for the sole purpose of using the bathroom, which did not provide a pecuniary

---

[1] The Michigan Supreme Court has requested briefing on the issue whether the Court should adopt the Third Restatement of Torts' reasonable-care standard in lieu of traditional status-based categories to determine a premises possessor's duty to persons who suffer physical harm caused by a condition on the land. *Molitoris v. Staint Mary Magdalen Catholic Church*, Mich. Sup. Ct. Docket No. 166699. Oral argument is schedule for October 8, 2025. However, as of now, duty under Michigan law is based on the visitor's status on the land. *Stitt*, 614 N.W.2d 91.

benefit to Defendant on that day.  Plaintiff argues she was an invitee because she

regularly visited the gas station, sometimes making a purchase and other times not,

but merely by entering the store there was the potential that she would make a

purchase.

Plaintiff's theory finds support in legal treatises.  An authoritative Torts

hornbook teaches that "by any definition," invitees include "[c]ustomers and

prospective customers on the premises of any business open to sell goods [or]

provide services."  Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law

of Torts § 275 (2d ed.).  A comment to the Restatement of Torts explains:

> It is not necessary that the visitor's purpose be to enter into immediate
> business dealings with the possessor.  The benefit to the possessor
> may be indirect and in the future.  Thus, those who enter a shop with
> no present purpose of buying but merely to look at the goods
> displayed, are business visitors of the shop . . ..

Restatement (Second) of Torts § 332, Comment f (1965).

The Michigan Supreme Court applies the same reasoning when it explains

why an invitee is owed a higher duty of care:

> It is the owner's desire to foster a commercial advantage by inviting
> persons to visit the premises that justifies imposition of a higher duty.
> In short, we conclude that the prospect of pecuniary gain is a sort of
> quid pro quo for the higher duty of care owed to invitees.  Thus, we
> hold that the owner's reason for inviting persons onto the premises is
> the primary consideration when determining the visitor's status:  In
> order to establish invitee status, a plaintiff must show that the
> premises were held open for a commercial purpose.

*Stitt*, 614 N.W.2d at 95.

8

The cases cited by Defendant in support of Plaintiff being a licensee are distinguishable because the plaintiffs in those cases could not be considered customers or prospective customers. *See Mallory v. Platinum Sports, Ltd.*, No. 257671, 2006 WL 657040, at *2 (Mich. Ct. App. Mar. 16, 2006) (holding that plaintiff was a licensee where he briefly entered premises for sole purpose of providing transportation to his girlfriend who worked for defendant, where there was no prospect that he would provide an economic benefit to defendant and his presence was merely tolerated by defendant); *Howard v. Sears, Roebuck & Co.*, No. 05-72605, 2006 WL 8432321, at *3 (E.D. Mich. May 22, 2006) (plaintiff who crossed defendant's lot to get to her job with another retailer was a licensee because she had no intention at that time of entering plaintiff's store, which was closed and would not open for four hours; defendant derived no benefit from plaintiff's presence on its property).

The Court finds the facts and reasoning in *Witten v. Heitman Properties of Michigan Ltd.*, No. 200927, 1998 WL 2016544 (Mich. Ct. App. March 20, 1998) to be helpful in classifying Plaintiff's status on Defendant's premises. The plaintiff in *Witten* was a long-time mall walker. Plaintiff's sole reason for going to the mall on the date she was injured was to walk laps with her friend. She testified that some days she walked and left before the stores opened. Other times she stayed and purchased a coffee or shopped. The Michigan Court of Appeals found that

"plaintiff's presence in the mall could reasonably be said to anticipate a business benefit to its owner.  *Id*. at *2 (citing *Socha*, 306 N.W.2d at 318)  There, the court found that because reasonable minds could differ as to whether plaintiff was an invitee or a licensee, the question of plaintiff's status should be left to the trier of fact. Id. .

Here, Plaintiff frequently stopped at Defendant's gas station on her way to work to buy a coffee or to use the bathroom.  As the gas station was open to the public to sell goods and provide services, Plaintiff could be seen as a prospective customer who brought the potential of economic advantage to Defendant each time she entered the premises. In this case, that potential is not merely theoretical. Images taken from the store's surveillance video on the date at issue appear to show Plaintiff's head turned in the direction of the offerings in the aisle as she walked to the bathroom.

While the Court views the evidence as more heavily favoring a finding that Plaintiff is an invitee, reasonable minds could differ as to Plaintiff's status on Defendant's property. Therefore, the question of Plaintiff's status at the gas station, as either invitee or licensee, should be left to the trier of fact.

**Duty**

In Michigan, "an invitee is entitled to the highest level of protection under premises liability law." *Kandil-Elsayed*, 1 N.W.3d at 52 (quoting *Stitt*, 614

N.W.2d at 92). Under this heightened level of protection, landowners owe a duty
"to exercise reasonable care to protect invitees from an unreasonable risk of harm
caused by a dangerous condition of the land." *Id*. (quotation marks and citation
omitted). "The landowner has a duty of care, not only to warn the invitee of any
known dangers, but the additional obligation to also make the premises safe, which
requires the landowner to inspect the premises and, depending upon the
circumstances, make any necessary repairs or warn of any discovered hazards."
*Stitt*, 614 N.W.2d at 92.

As it relates to ice and snow, the duty owed to an invitee requires "that
reasonable measures be taken within a reasonable time after an accumulation of ice
and snow to diminish the hazard of the injury to the invitee." *Kandil-Elsayed*, 1
N.W.3d at 72 (quoting *Quinlivan v. Great Atl. & Pac. Tea Co.*, 235 N.W.2d 732,
740 (Mich. 1975)).

By contrast, a "landowner owes no duty of inspection or affirmative care to
make the premises safe for the licensee's visit." Stitt, 462 Mich. at 596 (emphasis
added). Specifically, a "landowner owes a licensee a duty only to warn the licensee
of any hidden dangers the owner knows or has reason to know of, if the licensee
does not know or have reason to know of the dangers involved." Stitt, 462 Mich. at
596.(a landowner owes no duty of inspection or affirmative care to make the
premises safe for the licensee's visit.) Stitt, 462 Mich. At 596.

11

**Breach of Duty**

A landowner's duty "extends only to conditions that [it] knows of or should have known about." *Stout v. Chapman*, No. 355608, 2021 WL 5225932, at *2 (Mich Ct. App. Nov. 9, 2021). In other words, "the plaintiff must 'establish that defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition.'" *Id.* (quoting *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016)). Constructive notice exists where "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 890 N.W.2d at 350.

The question whether a defendant's conduct fell below the standard of care is generally one for the finder of fact. *Berryman v. Country Place Condo. Ass'n*, No. 362974, 2023 WL 9015108, at *2 (Mich. Ct. App. Dec. 28, 2023). The factfinder may consider all the circumstances to determine whether the landowner reasonably should have anticipated harm to the invitee. *See Kandil-Elsayed*, 1 N.W.3d at 71.

Defendant maintains the Plaintiff has offered no evidence that Defendant knew or had reason to know of the alleged invisible, black ice near the walkway and parking lot where Plaintiff fell. Manager Harrod would have spread salt if she noticed ice or if anyone reported ice, neither of which occurred. Harrod walked by

12

the area when she arrived at work earlier that morning and did not observe any water pooling in the area or any ice that had formed.  Harrod further testified that in the three or four years she worked at the gas station she never observed a leak in the canopy or black ice.  Even Plaintiff said she could not describe what the patch of black ice looked like because it was impossible to see until she was on the ground.

However, Defendant's operations manual specifically advises employees to inspect the driveway and sidewalks in winter when temperatures fall below freezing at night.  The manual directs employees to "pay particular attention to canopy edges, drains, [and] leaking canopies[.]"  From this directive, a factfinder could reasonably infer that Defendant was aware that canopies can leak and should have anticipated issues with ice forming beneath leaks when temperatures fluctuate, causing water to thaw and re-freeze.  Indeed, Defendant's employee, Crystal Bigelow, testified that the canopy above the area where Plaintiff fell leaked regularly, anytime snow melted or there was a heavy rain.  Ms. Bigelow did not know if the canopy leaked on February 26, 2021, because she did not park in that area when she arrived at work that day.

Weather records provide additional evidence for the factfinder to consider. There had been snow earlier in the week, and the temperatures on the intervening days were in the 40s and 50s, while dropping to below freezing overnight.

13

Finally, a photograph taken after Plaintiff fell shows that portions of the concrete were darker than the rest of the parking lot. The dark areas could be consistent with the presence of ice in the area where Plaintiff fell.

Defendant argues that Plaintiff's canopy leak theory, which is supported by the testimony of an employee who admitted she does not know if the canopy was leaking on the date in question, is rank conjecture. The Michigan Court of Appeals held that a party cannot rest on mere speculation to meet its burden of providing evidence that a defendant knew or should have known a hazardous condition existed on the day in question. *Narlock v. Wimbish*, No. 365220, 2023 WL 8867953, at *4 (Mich. Ct. App. Dec. 21, 2023). In *Narlock*, the plaintiff argued that defendant homeowner had notice that her gutter was leaking, so she therefore had notice that melting snow from the roof would cause water to drip from the gutter onto the porch and refreeze, causing ice to form on the porch. The court held that possible knowledge of a leaky gutter, which was not the hazardous condition at issue, was insufficient to demonstrate that defendant had actual or constructive knowledge of ice on the porch. *Id*. at *4-5.

Here, Defendant's own operations manual instructs its employees to pay particular attention to canopy edges and leaking canopies when temperatures fall below freezing at night. When Manager Harrod's testimony that she was not aware of leaking canopies on the premises is considered alongside Ms. Bigelow's

14

testimony that the canopy leaked regularly and was "not hard to miss," there is a

credibility determination that must be made by the factfinder.  The Cout agrees that

a leaky canopy is not the hazardous condition in this case, but given the other

evidence presented by Plaintiff, the factfinder could conclude that Defendant

possessed sufficient information such that it was reasonable to expect it should

have discovered the ice and addressed the danger it presented.

## CONCLUSION

Drawing all inferences from the evidence in the light most favorable to

Plaintiff, the Court finds there is a genuine issue as to 1) whether Plaintiff should

be classified as a invitee or a licensee; and 2) whether Defendant should have

known of the dangerous condition on its premises such that it would be liable

under a premises liability claim.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Summary Judgment (ECF

No. 17) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 15, 2025

15